David Seifert and Sandra Seifert,
Petitioners-Appellants,

v.

School District of Sheboygan Falls,
Respondent-Respondent.

Court of Appeals

*No. 2006AP2071. Oral argument July 19, 2007.
—Decided August 29, 2007.*

2007 WI App 207

(Also reported in 740 N.W.2d 177.)

On behalf of the petitioners-appellants, the cause was submitted on the briefs and oral argument of *Amy Irene Washburn* of *Darrow, Dietrich & Hawley, S.C.* of Sheboygan.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Bradley D. Armstrong* and *Lori M. Lubinsky* of *Axley Brynelson, LLP,* of Madison. There was oral argument by *Lori M. Lubinsky.*

Before Brown, C.J., Nettesheim and Snyder, JJ.

¶ 1. NETTESHEIM, J. This case involves the Wisconsin Open Records Law, WIS. STAT. §§ 19.31–19.39 (2005–06),[1] with particular emphasis on § 19.35. David and Sandra Seifert appeal from a judgment dismissing

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

their petition and supplemental petition for a writ of mandamus. The petitions sought to reverse the decision of the School District of Sheboygan Falls not to release records related to its investigation of the Seiferts' complaints about their son's high school football coach.

¶ 2. The Seiferts had filed a Notice of Injury with the District before submitting their Open Records request. The circuit court denied the initial petition because it concluded, as did the District, that the requested records were compiled in connection with circumstances that may lead to a court proceeding and thus were exempt from disclosure pursuant to WIS. STAT. § 19.35(1)(am)1. The court also denied the petition under § 19.35(1)(a) as a request for employee personnel records pursuant WIS. STAT. § 19.36(10)(d).

¶ 3. The circuit court further denied the Seiferts' supplemental petition seeking records of the attorney fee bills incurred by the District as a result of an investigation conducted by the District's general counsel in response to the Seiferts' complaints. The court held that the Seiferts' request was ambiguous as to whether it covered the billing records. The court also held that the issue was moot since the Seiferts had already obtained copies of the attorney fee bills from another source.

¶ 4. In light of these rulings, the circuit court also rejected the Seiferts' request for punitive damages.

¶ 5. On appeal, the Seiferts contend the District and the circuit court used an improper sequence in analyzing their request. They complain that the District and the court erred by first assessing their request under WIS. STAT. § 19.35(1)(am). They argue that the analysis instead should have commenced under § 19.35(1)(a), which they assert would have resulted in the release of the records. We disagree. We conclude

that § 19.35(1)(a) and (am) do not always present wholly discrete inquiries. In some cases, considerations supporting nondisclosure under § 19.35(1)(am)1. also may arise under the statutory or common-law exceptions under § 19.35(1)(a) and the balancing of interests contemplated under that subsection. We hold that this is such a case. The Seiferts' Notice of Injury led to the District's investigation and generated the records the Seiferts now seek. The District's collective reasons for not releasing the records—especially the formalized suggestion, if not the threat, of litigation—are justified by common-law and statutory principles protecting attorney work product, public policies underlying the open meeting statute, and the balancing of public interests.

¶ 6. Finally, we agree that the District reasonably concluded that the Seiferts' Open Records request did not embrace the attorney fee bills and therefore the District's failure to produce such records did not violate the Open Records Law.

¶ 7. We therefore uphold the circuit court's ruling that the District did not violate the Open Records Law and that the District's conduct was not arbitrary and capricious warranting an award of punitive damages. We affirm the order.

## BACKGROUND

¶ 8. The essential facts, taken from the Seiferts' petition and from affidavits filed on the parties' behalf, are not in dispute. The Seiferts' son, Patrick, played varsity football at Sheboygan Falls High School. During the 2004–05 school year, a dispute arose between the Seiferts and Coach Dan Juedes. The Seiferts contended that Juedes had belittled Patrick in front of the team

for not playing, per his doctor's orders, while injured. They also contended that Juedes had withheld mail from college recruitment programs addressed to Patrick in care of the school.

¶ 9. In April 2005, the Seiferts filed a Notice of Injury with the District relating to damages they claimed Juedes' actions caused Patrick. On June 20, the Seiferts attended a school board meeting at which they said Juedes had violated Patrick's rights and they would commence litigation unless the District took action. On June 22, the board president wrote a letter to Juedes ("the board letter") advising him that the board deliberated after meeting with the Seiferts and their attorney and determined to employ an attorney/investigator to immediately commence an investigation. The District then hired its general counsel, Davis & Kuelthau, S.C., to investigate the Seiferts' complaints against Juedes and report back with a recommendation to the Board. The District's counsel conducted the requested investigation and retained all notes and documents generated in the course of the inquiry. The investigation resulted in a September 14, 2005 agreement among Juedes, the District and the Sheboygan Falls Faculty Association ("the Agreement"). The District maintained only the Agreement and the board letter in its possession. Both were placed in Juedes' personnel file.[2]

¶ 10. In October, the Seiferts filed a request with the District under the Open Records Law for:

> all records (including, but not limited to, all materials, documents, reports, statements, interviews, meeting minutes and agenda, correspondence, evaluations,

---

[2] After the Seiferts commenced this action, both the Agreement and the board letter were filed under seal with the circuit court for an in camera inspection.

memoranda, agreements, contracts, notes, etc.) which were considered, produced, created, maintained, or kept by the District and/or its agents and attorneys in the course of the investigation, including records which relate to the disposition of the investigation, any disciplinary actions taken or to be taken by the District and/or its agents against Coach Juedes, and/or any recommendations with regard to the future as a result of the investigation.

The Seiferts also specifically requested pursuant to WIS. STAT. § 19.35(1)(am) all records containing personally identifiable information about David, Sandra or Patrick which were "considered, produced, created, maintained, or kept by the District and/or its agents and attorneys in the course of the investigation, including the disposition of the investigation."

¶ 11. The District denied the Seiferts' request. The three-page letter detailed numerous reasons for the denial, including: (1) the records were exempt under WIS. STAT. § 19.35(1)(am)1. as records containing personally identifiable information that was collected or maintained in connection with a complaint, investigation or other circumstances that may lead to a court proceeding; (2) the records were the work product of the District's counsel and contained privileged information; and (3) the records were part of Juedes' personnel file. The letter did not address any attorney fee billing records.

¶ 12. The Seiferts then filed a petition for a writ of mandamus pursuant to the Open Records Law seeking an order directing the District to release the records recited in their request. Shortly thereafter they filed a supplemental petition for the Davis & Kuelthau attorney fee billing records after learning that the District had released those billing records to another

Open Records requester who had specifically requested them. The Seiferts had received a copy of the billing records from someone to whom the other requester had given a copy, and they attached that copy to their supplemental petition. The Seiferts contended that the District's failure to release the attorney fee billing records was improper because the records contained personally identifiable information. In support, the Seiferts noted two entries on the billings labeled "Seifert."

¶ 13. The District defended against the Seiferts' petition, relying on the reasons for refusal set out in the District's letter of denial. As to the attorney fee billings, the District responded that the records custodian did not consider the Davis & Kuelthau bills to be within the scope of the Seiferts' request because: (1) the bills were not specifically mentioned or identified in the request, and (2) the District did not construe the bills to be created or kept "in the course of the investigation."[3]

¶ 14. The circuit court denied both petitions. As to the initial petition, the court concluded that the records were exempt under Wis. Stat. § 19.36(10)(d) because they were maintained in Juedes' personnel file to be used in evaluating his job performance. The court also concluded that the records were exempt under § 19.35(1)(am)1. as records collected or maintained in connection with circumstances that may lead to a court proceeding because the investigation flowed from the Notice of Injury, the first step in a court proceeding against a government entity. Finally, the court denied the supplemental petition because the request was ambiguous as to whether it covered the attorney fee

---

[3] These determinations were made by the District's administrator and record custodian.

billings. The court also held that this issue was moot since the Seiferts already had received the billing records. from another source. As a result of these rulings, the court concluded that the District had not acted arbitrarily and capriciously and therefore rejected the Seiferts' claim for punitive damages. Later, the court denied the Seiferts' motion for reconsideration. The Seiferts now appeal from the order denying their petitions for a writ of mandamus.

## DISCUSSION

¶ 15. Wisconsin's Open Records Law represents the legislature's policy of favoring the broadest practical access to government. *Hempel v. City of Baraboo*, 2005 WI 120, ¶ 22, 284 Wis. 2d 162, 699 N.W.2d 551. The general presumption is that public records shall be open to the public unless there is a clear statutory exception, a limitation under the common law, or an overriding public interest in keeping the public record confidential. *Wisconsin Newspress, Inc. v. School Dist. of Sheboygan Falls*, 199 Wis. 2d 768, 776, 546 N.W.2d 143 (1996) (citations omitted). The Seiferts contend that none of those conditions exist to justify the District's decision not to release the records they seek.

### A. Standard of Review

¶ 16. Here the controlling facts are not in dispute. Thus, our task is to apply the Open Records Law to those undisputed facts. Where a circuit court determines a petition for writ of mandamus by interpreting Wisconsin's Open Records Law and has applied that law

595

to undisputed facts, we review the court's decision de novo. *ECO, Inc. v. City of Elkhorn*, 2002 WI App 302, ¶ 15, 259 Wis. 2d 276, 655 N.W.2d 510.

### B. Wis. Stat. § 19.35 Generally

¶ 17. We are asked to examine this case in light of certain provisions of the Open Records Law, particularly Wis. Stat. § 19.35, which provides in relevant part:

(1) RIGHT TO INSPECTION. (a) Except as otherwise provided by law, any requester has a right to inspect any record. Substantive common law principles construing the right to inspect, copy or receive copies of records shall remain in effect. The exemptions to the requirement of a governmental body to meet in open session under s. 19.85 are indicative of public policy, but may be used as grounds for denying public access to a record only if the authority or legal custodian under s. 19.33 makes a specific demonstration that there is a need to restrict public access at the time that the request to inspect or copy the record is made.

(am) In addition to any right under par. (a), any requester who is an individual or person authorized by the individual, has a right to inspect any record containing personally identifiable information pertaining to the individual that is maintained by an authority and to make or receive a copy of any such information. The right to inspect or copy a record under this paragraph does not apply to any of the following:

1. Any record containing personally identifiable information that is collected or maintained in connection with a complaint, investigation or other circumstances that may lead to an enforcement action, administrative proceeding, arbitration proceeding or court proceeding, or any such record that is collected or maintained in connection with such an action or proceeding.

. . . .

**(4)** Time for compliance and procedures.

. . . .

(c) If an authority receives a request under sub. (1) (a) or (am) from an individual or person authorized by the individual who identifies himself or herself and states that the purpose of the request is to inspect or copy a record containing personally identifiable information pertaining to the individual that is maintained by the authority, the authority shall deny or grant the request in accordance with the following procedure:

1. The authority shall first determine if the requester has a right to inspect or copy the record under sub. (1) (a).

2. If the authority determines that the requester has a right to inspect or copy the record under sub. (1) (a), the authority shall grant the request.

3. If the authority determines that the requester does not have a right to inspect or copy the record under sub. (1) (a), the authority shall then determine if the requester has a right to inspect or copy the record under sub. (1) (am) and grant or deny the request accordingly.

## C. The Statutory Sequence

¶ 18. The Seiferts assert a right to the records relating to the Juedes investigation under Wis. Stat. § 19.35(1), and challenge the process, substance and result of the circuit court's upholding of the District's denial of their requests. The Seiferts registered their Open Records request under both § 19.35(1)(a), which, "[e]xcept as otherwise provided by law," grants "any requester . . . [the] right to inspect any record," and

597

under § 19.35(1)(am), which grants access except in the enumerated instances to records "containing personally identifiable information" about them. A request under subsec. (1)(a) or (1)(am) which seeks "personally identifiable information" triggers the procedure laid out in WIS. STAT. § 19.35(4)(c) that a records custodian must follow in its disclosure analysis.

¶ 19. The Seiferts contend that had the District abided by the WIS. STAT. § 19.35(4)(c) sequence, release of the records was required by the broad mandate of access under § 19.35(1)(a). As such, the Seiferts reason that the District should not have looked to the exemption for "personally identifiable information that is collected or maintained in connection with a complaint, investigation . . . that may lead to an enforcement action, administrative proceeding, arbitration proceeding or court proceeding . . ." under subsec. (1)(am)1. The Seiferts argue that the District and the circuit court instead reversed the statutory sequence and applied the § 19.35(1)(am)1. exemption first, using it to block access to the records to which they believe they are entitled under subsec. (1)(a).

¶ 20. As indicated, WIS. STAT. § 19.35(4)(c) mandates that when an individual requests records containing personally identifiable information about him- or herself, the authority "shall deny or grant the request" in accordance with a specific procedure. At oral argument,[4] the parties debated the proper sequence at length; *Hempel*, a recent supreme court case, figured prominently in that exchange. *See Hempel*, 284 Wis. 2d 162. There, Hempel, a police officer, requested records

---

[4] We are grateful to and commend both attorneys for their well-prepared and well-presented oral arguments, which were of great benefit in clarifying the issues.

relating to an internal investigation into sexual harass-ment allegations filed against him. *Id.*, ¶ 1. The supreme court acknowledged that § 19.35(4)(c) dictates the se-quence in which an authority must analyze an individual's request for records containing personally identifiable information, and the authority first must examine the requester's rights under § 19.35(1)(a). *Hempel*, 284 Wis. 2d 162, ¶ 29; § 19.35(4)(c)1. Neverthe-less, the *Hempel* court turned first to § 19.35(1)(am) before embarking on a lengthy analysis under subsec. (1)(a). *Hempel*, 284 Wis. 2d 162, ¶¶ 32, 58–81.

¶ 21. The Seiferts contend the *Hempel* court did so because certain of the records sought under Wis. Stat. § 19.35(1)(a) had already been released to Hempel. That does not explain, however, the extensive twenty-four paragraph analysis of § 19.35(1)(a) that the supreme court undertook after its subsec. (1)(am) analysis.[5] We think it more likely that the court considered subsec. (1)(am) first because Hempel had made a general re-quest under § 19.35(1), and did not stress that the purpose of the request was to inspect or copy a record containing personally identifiable information pertain-ing to him. *Hempel*, 284 Wis. 2d 162, ¶ 30. A general request does not trigger the § 19.35(4)(c) review se-quence. *See id.*

¶ 22. Moreover, as the District argues, Wis. Stat. § 19.35(4)(c) recites the procedure to be employed "[i]f *an authority* receives a request under (1) (a) or (am)."

---

[5] In this analysis, the supreme court examined the statutory and common-law exceptions to the presumption of access and also performed the balancing test. *Hempel v. City of Baraboo*, 2005 WI 120, 284 Wis. 2d 162, ¶¶ 58–81, 699 N.W.2d 551.

(Emphasis added.) An "authority" is an entity having custody of a record. WIS. STAT. § 19.32(1). The definition does not include a reviewing court. Despite what the *Hempel* dissent terms "the legislature's crystal-clear mandate as to the order in which to consider the two statutes," *Hempel*, 284 Wis. 2d 162, ¶ 89 (Abrahamson, C.J., dissenting), § 19.35(4)(c) equally clearly addresses itself to "an authority"—*i.e.,* a record custodian. It does not bind a reviewing court to the same procedure. In the final analysis, then, *Hempel* is not determinative here on the sequence question.

¶ 23. Apart from *Hempel*, the Seiferts argue that the District's letter of denial reveals that the District conducted its analysis in the wrong sequence. True, the first reason in the District's letter of denial does reference WIS. STAT. § 19.35(1)(am)1., the Notice of Injury and comments the Seiferts made about threatened litigation. The three-page letter goes on, however, to cite ten more reasons and sub-reasons, such as public policy concerns related to confidential communications between District officials and its legal counsel and to records in Juedes' official personnel file. The letter also specifically invokes WIS. STAT. § 19.85, governing open meetings, and its underlying policy concerns regarding personnel matters and conferring with legal counsel with respect to litigation in which the District is likely to become involved.[6] The letter nowhere says that the sequence in which the reasons are listed represents

---

[6] WISCONSIN STAT. § 19.35(1) states, in part:

The exemptions to the requirement of a governmental body to meet in open session under s. 19.85 are indicative of public policy, but may be used as grounds for denying public access to a record only if the authority . . . makes a specific demonstration that there is a need to restrict public access at the time that the request to inspect or copy the record is made.

either their order of consideration or their order of importance. Considering the list as a whole, the letter reasonably can be read as representing the District's determination that, on balance, the public interest favoring nondisclosure outweighed that favoring disclosure. That a reason which also constitutes a § 19.35(1)(am)1. exemption factored into the balancing suggests to us no more than that the District considered the full set of circumstances before it.

¶ 24. We likewise are unconvinced that the circuit court reversed the sequence. We agree that the District presented its argument at the motion hearing in the order to which the Seiferts object, explaining that it modeled its approach on *Hempel.* The court, however, plainly states in its oral decision that it "first consider[ed] the general request under [WIS. STAT. § ] 19.35(1)(a)." As the Seiferts offer nothing to contradict this record, we accept the court's statement.

### D. The Seiferts' Open Records Request

¶ 25. Having resolved the sequence issue, we turn to the merits of the Seiferts' Open Records request. The Seiferts made a general request pursuant to WIS. STAT. § 19.35(1)(a) and a specific request for records containing personally identifiable information about them pursuant to § 19.35(1)(am). Although we have concluded that a reviewing court is not held to the § 19.35(4)(c) sequence, we consider whether the District's denial can be sustained under that statutory procedure.

### 1. WIS. STAT. § 19.35(1)(a)

¶ 26. Under WIS. STAT. § 19.35(1)(a), disclosure is the rule "[e]xcept as otherwise provided by law." The exceptions are grounded in statutory law and common

601

law. *Hempel*, 284 Wis. 2d 162, ¶ 28. As to statutory exceptions, the circuit court denied the § 19.35(1)(a) request on grounds that the records did not have to be disclosed because they were employee personnel records under WIS. STAT. § 19.36(10)(d). Relying on *Kroeplin v. Wisconsin DNR*, 2006 WI App 227, ¶ 20, 297 Wis. 2d 254, 725 N.W.2d 286, *review denied,* 2007 WI 59, 299 Wis. 2d 325, 731 N.W.2d 636, the Seiferts contend that there exists no blanket exemption for personnel records.

¶ 27. However, we conclude that a discussion of WIS. STAT. § 19.36(10)(d) is unnecessary. Since our review is de novo and the parties have briefed and orally argued the question of whether the records at issue fall under the statutory and common-law exception for attorney work product, we address the Seiferts' Open Records request under that law. *See Glendenning's Limestone & Ready-Mix Co. v. Reimer*, 2006 WI App 161, ¶ 14, 295 Wis. 2d 556, 721 N.W.2d 704. ("[W]e may affirm the circuit court on an alternative ground as long as the record is adequate and the parties have the opportunity to brief the issue on appeal.") We conclude that the recognized statutory and common-law exception for attorney work product and the balancing test under WIS. STAT. § 19.35(1)(a) solidly support our affirmance of the circuit court's order.

¶ 28. The common law long has recognized the privileged status of attorney work product, including the material, information, mental impressions and strategies an attorney compiles in preparation for litigation. *See State ex rel. Dudek v. Circuit Ct. for Milwaukee County*, 34 Wis. 2d 559, 589, 150 N.W.2d 387 (1967). The work-product doctrine set forth in *Dudek* now is generally codified by WIS. STAT. § 804.01(2)(c)1. *State v.*

*Hydrite Chem. Co.*, 220 Wis. 2d 51, 61, 582 N.W.2d 411 (Ct. App. 1998). The records here clearly were generated in response to the Seiferts' formal indication, via their Notice of Injury filing and their declarations at the school board meeting, that the possibility of litigation loomed, even if not certainly and imminently.[7] The Open Records Law cannot be used to circumvent established principles that shield work product. Nor can it be used as a discovery tool. *See Hempel*, 284 Wis. 2d 162, ¶ 56 ("A requester who does not qualify for access to records under [Wis. Stat. § 19.35(1)(am)] will always have the right to seek records under Wis. Stat. § 19.35(1)(a), as well as civil and criminal discovery statutes in appropriate circumstances."). Accordingly, we conclude that the presumption of access under

---

[7] Although the Seiferts titled the notice as a "Notice Of Injury," the language of the notice states that it is filed pursuant to Wis. Stat. § 893.80(1) without discriminating between subsec. (1)(a) and (1)(b). Subsection (1)(a) requires notice of the "circumstances of the claim" while subsec. (1)(b) requires "an itemized statement of the relief sought." Since the notice does not itemize the relief sought, we assume that notice was filed pursuant to subsec (1)(a).

In addition, the Seiferts dispute that the Notice of Injury constitutes a threat of litigation and instead contend that it simply preserves their right to sue should they decide to do so. The Seiferts are only half right. We agree that the filing of the notice preserved their right to sue. But the filing of a notice under Wis. Stat. § 893.80(1)(a) also conveys the clear threat of potential litigation. "The purpose of the notice of injury is to notify the governmental entity of the potential claim so that it might investigate and evaluate." *Vanstone v. Town of Delafield*, 191 Wis. 2d 586, 593, 530 N.W.2d 16 (Ct. App. 1995). Regardless, in light of the investigation and resultant records the Notice of Injury spawned in this case, the distinction drawn by the Seiferts is immaterial.

§ 19.35(1)(a) is defeated because the attorney work product qualifies under the "otherwise provided by law" exception.

¶ 29. Having so concluded, we could simply move on to the Seiferts' open records request under WIS. STAT. § 19.35(1)(am) without balancing the competing interests for and against disclosure. *See* § 19.35(4)(c)1., 3. In the interest of completeness, however, we choose to also examine the Seiferts' request in the context of the District's balancing exercise.

¶ 30. If no statutory or common-law exceptions apply, a records custodian is permitted to engage in a balancing test to decide whether the strong presumption favoring disclosure is overcome by some even stronger public policy favoring limited access or nondisclosure. *See Linzmeyer v. Forcey*, 2002 WI 84, ¶ 11, 254 Wis. 2d 306, 646 N.W.2d 811. We consider de novo whether the public interest in nondisclosure outweighs the public interest in disclosure. *State ex rel. Ledford v. Turcotte*, 195 Wis. 2d 244, 250, 536 N.W.2d 130 (Ct. App. 1995).

¶ 31. As mentioned earlier, *Hempel* played a prominent role at oral argument and, while the case is not wholly determinative, we look to it for the policy guidance it provides. *Hempel* teaches that an open records analysis under WIS. STAT. § 19.35(1)(a) must be approached on a case-by-case basis. *Hempel*, 284 Wis. 2d 162, ¶ 62. To that we add that a custodian is not expected to examine a request under § 19.35(1)(a) in a vacuum. Rather, the statute contemplates an examination of all the relevant factors, considered in the context of the particular circumstances. *Hempel*, 284 Wis. 2d 162, ¶ 63. The custodian must determine

whether the surrounding factual circumstances create an "exceptional case" not governed by the strong presumption of openness. *Id.*; *see* WIS. STAT. § 19.31 ("The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied."). An exceptional case is one in which, despite the strong presumption favoring disclosure, "the facts are such that the public policy interests favoring nondisclosure outweigh the public policy interests favoring disclosure." *Hempel*, 284 Wis. 2d 162, ¶ 63. While reiterating that custodians must remain mindful of the presumption of openness, *Hempel* also stresses that each request entails a fact-intensive inquiry such that "the legislature entrusted [custodians] with substantial discretion" in performing a disclosure analysis. *Id.*, ¶ 62.

■■■

¶ 32. The District offers a compelling argument that, given the fact-specific nature of each case, the two WIS. STAT. § 19.35(1) subsections do not always present the discrete, separate inquiries the statute suggests on first reading. Instead, the District asserts that the records generated here factor into the analysis under both. After filing their WIS. STAT. § 893.80(1) Notice of Injury, the Seiferts attended a school board meeting and registered their complaint that Juedes had violated their son's civil rights and threatened to sue if the District did not act. Idle threat or not, it remains that as a direct result of the Seiferts' actions, which laid the groundwork for future litigation, the District hired legal counsel to investigate the allegations against Juedes. The resulting records could not more clearly have been collected in connection with a "complaint, investigation or other circumstances that may lead to . . . [a] court proceeding," and therefore constitute an

605

exemption under subsec. (1)(am)1. *See* § 19.35(1)(am)1. This subsection plainly allows a records custodian to deny access to one who is, in effect, a potential adversary in litigation or other proceeding unless or until required to do so under the rules of discovery in actual litigation. *See Local 2489, AFSCME, AFL-CIO v. Rock County*, 2004 WI App 210, ¶ 17, 277 Wis. 2d 208, 689 N.W.2d 644.

¶ 33. The legislature plainly saw a need to permit nondisclosure of records pertaining to potential litigation and provided an avenue to do so in WIS. STAT. § 19.35(1)(am)1. We see no reason why a record custodian in the course of balancing the competing interests should not be able to consider that factor under subsec. (1)(a) when evaluating the entire set of facts before it and making its "specific demonstration" of the need for withholding the records. The balancing of interests under § 19.35(1)(a) must include examining all the relevant factors in the context of the particular circumstances. *See Hempel*, 284 Wis. 2d 162, ¶ 63.

¶ 34. We think it a mechanistic and unreasonable reading of WIS. STAT. § 19.35(1) and (4) to require the District's custodian to feign unawareness of the subsec. (1)(am)1. exemption in the first part of his analysis simply because it technically does not come into play until a later step. We must interpret statutes reasonably and as a whole, to avoid absurd or unreasonable results. *State ex rel. Kalal v. Circuit Ct. for Dane County*, 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110. We conclude that in a case such as this one, the whole-picture analysis may involve some interplay between the statutory subsections. The Seiferts' Notice of Injury, an official precursor to a lawsuit against the

District, assertedly followed by their public, verbal threat of suit, together with the other reasons and policy concerns cited, reasonably constitute, under the facts of this case, a "specific demonstration" of the "need to restrict public access." *See* § 19.35(1)(a).

## 2. WIS. STAT. § 19.35(1)(am)

¶ 35. Having determined that the Seiferts do not have a right to the records under WIS. STAT. § 19.35(1)(a), we next examine their right to them under subsec. (1)(am). *See* § 19.35(4)(c)3. The subsec. (1)(am) analysis is much more succinct. There is no balancing. *Hempel*, 284 Wis. 2d 162, ¶ 27. We simply examine whether, if the request is made by an appropriate individual, any of the enumerated exceptions apply. Under § 19.35(1)(am), any requester is entitled to disclosure of records "containing personally identifiable information pertaining to the individual" unless, among other narrowly drawn reasons, the records were "collected or maintained in connection with *a complaint, investigation or other circumstances that may lead to . . . [a] court proceeding.*" Sec. 19.35(1)(am)1. (emphasis added). The Seiferts insist that their Notice of Injury does not trigger the § 19.35(1)(am)1. exemption because theirs were not the only complaints about Juedes and because the District's investigation of him has concluded. We disagree.

¶ 36. Wisconsin Stat. § 19.35(1)(am) contains no requirement that the investigation be current. Only after the Seiferts filed their Notice of Injury and threatened suit if no action was taken did the District engage Davis & Kuelthau to investigate Juedes. The records

607

generated from the investigation fall squarely in the exemption under § 19.35(1)(am)1. The District and the circuit court properly denied the records under this subsection. That others may also have complained about Juedes does not alter the inescapable fact that the investigation was commenced on the heels of the Seiferts' Notice of Injury and the June 2005 school board meeting when the Seiferts registered their complaints. In response to those events, the District wrote to the Seiferts advising that it was hiring counsel to conduct an investigation.

### E. Denial of Attorney Billing Records

¶ 37. Around the same time that the District denied the Seiferts' Open Records request, it granted another requester's Open Records specific request for the attorney billing records relating to the Juedes matter. The Seiferts argue that since two entries in the billing records specifically refer to them by name, the records were responsive to their WIS. STAT. § 19.35(1)(am) request. They also contend the denial of their request and the release of these records to another individual is evidence that the District's decision was arbitrary and capricious, supporting an award of punitive damages.[8]

¶ 38. The Seiferts requested records "produced, created, maintained, or kept by the District and/or its agents and attorneys in the course of the investigation," including those containing "personally identifiable information." The District's records custodian averred by affidavit that he did not construe the Seiferts' request

[8] The Seiferts' request for punitive damages also travels to their original petition.

to encompass attorney billing records because the request did not specify such documents, and he did not consider billing records as being created or kept "in the course of the investigation." The custodian further averred that had the Seiferts requested the Davis & Kuelthau bills, he would have disclosed them. The circuit court agreed, finding that, as a request for billing records, the request was ambiguous and that the issue was otherwise moot because the Seiferts had since received a copy of those records. We need not address the mootness question because we agree with the circuit court that the Seiferts' request was ambiguous on the matter of the attorney fee billing records.

■■■■■

¶ 39. Determining ambiguity involves a question of fact and a circuit court's finding as to its meaning will be upheld unless clearly erroneous. *See Insurance Co. of N.A. v. DEC Int'l, Inc.*, 220 Wis. 2d 840, 847, 586 N.W.2d 691 (Ct. App. 1998). We acknowledge that an Open Records Law request need not contain any "magic words." *See ECO, Inc.*, 259 Wis. 2d 276, ¶ 23. It is sufficient if it is directed at an authority and reasonably describes the record or information requested. WIS. STAT. § 19.35(1)(h); *WIREdata, Inc. v. Village of Sussex*, 2007 WI App 22, ¶ 36, 298 Wis. 2d 743, 729 N.W.2d 757, *review granted*, 2007 WI 114, 302 Wis. 2d 104, 737 N.W.2d 431. However, the law recognizes that an overly broad request is insufficient if it is "without a reasonable *limitation* as to subject matter." WIS. STAT. § 19.35(1)(h); *WIREdata, Inc.*, 298 Wis. 2d 743, ¶ 36 (emphasis added). Here, we have the other side of the coin. Read in light of the background facts, a reasonable records custodian would not construe the Seiferts' request as *extending* to the attorney fee billings.

¶ 40. The District's records custodian was aware of the background events precipitating the Seiferts' Open Records requests: their claim that Juedes had civilly wronged their son, their filing of the Notice of Injury and their stated intent to sue if the District did not address the matter. Their request sought records concerning the investigation of their complaints. By the very words in their request, the Seiferts sought:

> all records (including, but not limited to, all materials, documents, reports, statements, interviews, meeting minutes and agenda, correspondence, evaluations, memoranda, agreements, contracts, notes, etc.) which were considered, produced, created, maintained or kept by the District ... *in the course of the investigation,* including records which *relate to the disposition of the investigation,* any disciplinary actions taken or to be taken by the District against Coach Juedes, and/or any recommendations with regard to the future *as a result of the investigation.* (Emphasis added.)

Similarly, the Seiferts' request under Wis. Stat. § 19.35(1)(am) sought personally identifiable information that was "considered, produced, created, maintained, or kept by the District and/or its agents and attorneys *in the course of the investigation,* including the *disposition of the investigation.*" (Emphasis added.)

¶ 41. Given that these requests were repeatedly linked to the "investigation," and measured against the background events, particularly the meeting with the District at which the Seiferts registered their complaints against Juedes which prompted the investigation, we readily conclude that a reasonable custodian would not have read the request as extending to the attorney fee billings resulting from the investigation. Rather, a reasonable custodian would read the request as limited to exactly what the request recited: records

produced "in the course of the investigation"; records "related to the disposition of the investigation"; records of "any disciplinary actions"; and "any recommendations with regard to the future as a result of the investigation." Failing to interpret that request as reaching to include billing records does not strike us as irrational.

¶ 42. While magic words are unnecessary, some requirement for specificity makes sense. A custodian should not have to guess at what records a requester desires. The District's release of these records to another requester who specially requested them does not govern the question as to the Seiferts' unspecified and ambiguous request. The District's response was not a violation of its responsibilities under the Open Records Law, much less "an unconsidered, willful [or] irrational choice of conduct" warranting punitive damages. *See State ex rel. Young v. Shaw*, 165 Wis. 2d 276, 294, 477 N.W.2d 340.

### F. "Possession" vs. "Control"

¶ 43. As a final matter, the Seiferts contend the District's refusal to release certain records retained in the investigating attorney's possession was improper because the issue is control, not physical possession. We need not review this issue because our decision on the issues already discussed disposes of the appeal. *See Clark v. Waupaca County Bd. of Adjustment*, 186 Wis. 2d 300, 304, 519 N.W.2d 782 (Ct. App. 1994).

### CONCLUSION

¶ 44. We in no way disagree with Wisconsin's settled policy that, subject to extremely narrow and well-defined exceptions, the workings of government

611

are open to public scrutiny. *See Journal/Sentinel, Inc. v. School Bd. of the Sch. Dist. of Shorewood,* 186 Wis. 2d 443, 447–48, 521 N.W.2d 165 (Ct. App. 1994). We conclude, however, that this case presents several of those exceptions. *Hempel* and the District's argument persuade us that the District's denial letter passes muster under the sequence prescribed in Wis. Stat. § 19.35(4)(c). We also conclude that, in the proper case, such as this, the subsec. (1)(am) considerations may factor into the subsec. (1)(a) analysis. Under this analysis, we hold that the records sought by the Seiferts constituted attorney work product or otherwise privileged communications and were not subject to release. We also hold that the Seiferts' request was ambiguous as to whether it covered the attorney fee billings and that the District did not violate the Open Records law by failing to produce such documents. From that, it follows that the District did not act arbitrarily and capriciously and therefore the circuit court properly rejected the Seiferts' demand for punitive damages.

*By the Court.*—Order affirmed.