COURT OF APPEALS
DECISION
DATED AND FILED

December 20, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP992**

STATE OF WISCONSIN

Cir. Ct. No. 2020CV7144

IN COURT OF APPEALS
DISTRICT I

MICHAEL MATTIOLI,

PLAINTIFF-APPELLANT,

V.

CITY OF MILWAUKEE POLICE DEPARTMENT,

DEFENDANT-RESPONDENT,

JOSE ACEVEDO AND MARIBEL ACEVEDO,

INTERVENORS-RESPONDENTS.

APPEAL from an order of the circuit court for Milwaukee County: WILLIAM S. POCAN, Judge. *Affirmed*.

Before Brash, C.J., Dugan and White, JJ.

¶1      WHITE, J.  Michael Mattioli appeals from the circuit court order denying his request to enjoin the disclosure of police investigation records under Wisconsin's public records law.  Mattioli argues that the records are exempt from disclosure because the records were maintained in connection with the ongoing criminal investigation.  Further, he argues that the circuit court's release of the records would interfere with his right to a fair trial, even with proposed redactions of his personal information.  Upon review, we conclude that the records may be released with the redactions previously ordered by the circuit court, and accordingly, we affirm.

## BACKGROUND

¶2      This case arises out of a public records request related to the death of Joel Acevedo after an altercation at Mattioli's home in April 2018.  On May 13, 2020, Mattioli, then a Milwaukee Police Department (MPD) officer, was charged with one count of first-degree reckless homicide.

¶3      On June 1, 2020, Jose and Maribel Acevedo, Joel's parents (hereinafter the Acevedos), filed a public records request with the City of Milwaukee and MPD, requesting records related to Joel's death and Mattioli's employment.  The following facts are taken from MPD's briefing to the circuit court,[1] "MPD denied that request, as the internal personnel investigation of Michael Mattioli was still ongoing at that time, and as WIS. STAT. § 19.36(10)(b)

---

[1] In its brief to the circuit court, MPD stated that it was not filing a dispositive motion, but was filing a brief "to provide additional factual and legal context beyond what was included in its answer" to Mattioli's complaint.

(2019-20)[2] prohibits an authority such as MPD from releasing records pertaining to an internal personnel investigation prior to the disposition of the investigation." In July 2020, the Acevedos filed a petition for a writ of mandamus ordering MPD to release the records. Mattioli resigned from his position as an MPD officer in September 2020. Again, as indicated in MPD's briefing, as a result of Mattioli's resignation, MPD's internal investigation of Mattioli was concluded. The Acevedos stipulated to dismissing the petition for a writ and submitted a new records request in September 2020.

¶4 In the second public records request to the City of Milwaukee and MPD, the Acevedos sought copies of "[A]ll 9-1-1 audio recordings, body cam[era] video, dash cam[era] video, call records, offense report, personnel file, investigative file, statements and all other relevant material related" to Joel's death. MPD responded to the Acevedos on November 19, 2020, offering a partial fulfillment of the request. MPD organized its understanding of the request as:

1. 911 Audio Recording

2. Computer Aided Dispatch (CAD) report

3. Michael Mattioli's Personnel file and Disciplinary Case File History

4. Michael Mattioli's Resignation letter

5. Milwaukee County's District Attorney's investigative report

6. Medical Examiner's report

7. State of Wisconsin Crime Lab report

---

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

8.  MPD Internal Affairs Division internal report

9.  Fire and Police Commission internal report

10.  Body Camera and Dash Camera footage

In its response to the Acevedos, MPD attached items one through six. Item seven was withheld per a statutory exemption for privileged evidence under WIS. STAT. § 165.47. Items eight and nine were withheld pending a lapse of a statutory deadline of notification of Mattioli pursuant to WIS. STAT. § 19.356(2)-(4). Item ten (hereinafter, the video footage) remained under review. MPD noted that certain personally identifiable information was redacted from the records.

¶5     That same day, MPD sent a letter to Mattioli, informing him that as the records custodian, it determined that the internal reports and the video footage were subject to disclosure. Mattioli was informed of his statutory rights under WIS. STAT. § 19.356(4) to seek a court action to enjoin the release of the information. Mattioli timely filed his action in circuit court, seeking an injunction precluding the release of the requested records. Also relevant here, the Acevedos intervened in the court action—as the requesters they were allowed to "intervene in the action as a matter of right." *See id.*

¶6     Before the circuit court, Mattioli argued that WIS. STAT. § 19.35(1)(am)1. exempted the records from open access because they were "collected or maintained in connection with a complaint [or] investigation[.]" Additionally, he argued that releasing the records would impede his right to a fair trial. MPD took no position on Mattioli's request. The Acevedos opposed the request and argued for the release of the records.

¶7     In May 2021, after briefing and oral argument, the circuit court issued a written decision concluding that the exemption to public records proffered

by Mattioli, WIS. STAT. § 19.35(1)(am)1. did not apply. The court found that "Mattioli's case [was] in the midst of criminal proceedings rather than an investigation where the government [was] still contemplating prosecution." The circuit court instead followed the standard procedure for records requests under § 19.35(1)(a), which the court stated required balancing the "relevant factors to determine whether the public interest in nondisclosure outweighs the public interest in favor of disclosure." The court concluded that "the requested records, including the body camera and dashboard camera footage, can be released in a manner so that disclosure would not interfere with Mr. Mattioli's criminal trial." The court was concerned about the effects of the video footage and statements on Mattioli's "ability to get a fair trial[.]" Therefore, it ruled that "while the videos should be released, Mr. Mattioli's image in the videos should be redacted, i.e. blocked or blurred out." The court further ordered Mattioli's statements be redacted.

¶8 Mattioli appeals.

## DISCUSSION

¶9 Mattioli argues that the exception in WIS. STAT. § 19.35(1)(am)1. prevents MPD from releasing the requested records under the public records law. The Acevedos argue that no exceptions apply and the records should be released. We conclude that paragraph (1)(am) does not apply to this records request and instead, its release is governed by paragraph (1)(a).

¶10 Public records cases generally fall into two categories: a party seeking to force the release of records or a party seeking to prevent the release of records. *Compare* **Hempel v. City of Baraboo**, 2005 WI 120, ¶¶18, 43, 284 Wis. 2d 162, 699 N.W.2d 551 (denying the release of public records under the

investigation exception in WIS. STAT. § 19.35(1)(am)), *with **Linzmeyer v. Forcey***, 2002 WI 84, ¶6, 254 Wis. 2d 306, 646 N.W.2d 811 (affirming the release of public records after concluding that the investigation exception was not applicable). We conclude that Mattioli's case is of the latter type. The application of the public records law to undisputed facts is a question of law that we independently review, while benefiting from the circuit court's analysis. *See **Hempel***, 284 Wis. 2d 162, ¶21. Determining the application of the public records law is a "matter of statutory interpretation, which we review independently[.]" ***Linzmeyer***, 254 Wis. 2d 306, ¶13.

¶11    We begin our analysis with the public records law, set forth in WIS. STAT. §§ 19.31-.37, which declares the policy of the law to be that "all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employees who represent them." Sec. 19.31. "The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied." ***Id.*** Access to public records is governed by WIS. STAT. § 19.35. Recognizing the public policy behind this law, the statute begins, "Except as otherwise provided by law, any requester has a right to inspect any record." Sec. 19.35(1)(a). In limited circumstances, the subject of a records request is notified about pending release and has the opportunity to seek a court order to enjoin the release. *See* WIS. STAT. § 19.356.

¶12    We focus on two types of requests:  the general request under paragraph (1)(a) and the additional request for personally identifiable information under paragraph (1)(am) of WIS. STAT. § 19.35. For basic public records requests under paragraph (1)(a), "there are no blanket exceptions from release, other than those provided by the common law or statute." ***Linzmeyer***, 254 Wis. 2d 306, ¶10.

6

"If no statutory or common-law exceptions apply, a records custodian is permitted to engage in a balancing test to decide whether the strong presumption favoring disclosure is overcome by some even stronger public policy favoring limited access or nondisclosure." *Seifert v. School Dist. of Sheboygan Falls*, 2007 WI App 207, ¶30, 305 Wis. 2d 582, 740 N.W.2d 177.

¶13 The second type of request set forth in WIS. STAT. § 19.35(1)(am) provides that in addition to rights of access under paragraph (1)(a), "any requester who is an individual or person authorized by the individual has a right to inspect any personally identifiable information pertaining to the individual in a record containing personally identifiable information that is maintained by an authority[.]" Sec. 19.35(1)(am). Thus, this paragraph focuses on the individual who is requesting to inspect records containing personally identifying information pertaining to that individual. Although there are three statutory exceptions, only one is at issue here:

> Any record containing personally identifiable information that is collected or maintained in connection with a complaint, investigation or other circumstances that may lead to an enforcement action, administrative proceeding, arbitration proceeding or court proceeding, or any such record that is collected or maintained in connection with such an action or proceeding.

Sec. 19.35(1)(am)1. In contrast to paragraph (1)(a), requests under paragraph (1)(am) "are not subject to any balancing test; the legislature has done the balancing by enacting statutory exceptions to the disclosure requirements." *Hempel*, 284 Wis. 2d 162, ¶27.

¶14 With the basics of public records law in mind, we turn to Mattioli's argument that WIS. STAT. § 19.35(1)(am)1. prevents MPD from releasing the requested records because of the pending criminal prosecution he faces in Joel's

death. The key to our analysis is that Mattioli is not requesting his own personally identifiable information contained in public records—he is seeking to enjoin disclosure of public records that contain personal identifying information about him. "The right to inspect under paragraph (am) is clearly limited to personally identifiable information about the requester." *Hempel*, 284 Wis. 2d 162, ¶34. The Acevedos requested records pertaining to Joel's death and Mattioli's conduct.[3] Mattioli is the subject of the investigation. Mattioli is not seeking access to his own personally identifiable information under the additional right of access in paragraph (1)(am).[4]

¶15    Two cases illustrate how the subdivision (1)(am)1. investigation exception is applied: *Linzmeyer* and *Hempel*. First, in *Linzmeyer*, the Wisconsin Supreme Court concluded that the public records law applied and no exceptions or public policy concerns barred release of records requested by a newspaper and several parents for a police report investigating a teacher suspected of inappropriate conduct.[5] *Id.*, 254 Wis. 2d 306, ¶¶1-2, 42. Like Mattioli, the teacher filed an action to enjoin the records release, but our supreme court concluded that

---

[3] To the extent that the Acevedos, as Joel's representatives, could arguably request additional access to Joel's personally identifiable information, we are not persuaded that potential status affects how Mattioli's action for an injunction is reviewed.

[4] Although the record custodian's understanding of the request is not dispositive, we consider it instructive. MPD's attorney stated that the request was not analyzed under WIS. STAT. § 19.35(1)(am)—"that enhanced analysis should not have been performed and was not performed."

[5] Our supreme court followed a two-step analysis of the public records inquiry in *Linzmeyer v. Forcey*, 2002 WI 84, ¶10, 254 Wis. 2d 306, 646 N.W.2d 811. "First, we determine whether the open records law applies to the record in question" by "look[ing] at the statutory language of that law, along with its statutory and common law exceptions." *Id.* "[O]ur second step is to determine if there is a public policy that overrides the presumption of openness." *Id.*, ¶11.

the subdivision (1)(am)1. investigation exception was not applicable "where the investigation has been closed and where it has been confirmed that there is no chance that the [records] will 'lead to an enforcement action.'" *Id.*, ¶17.

¶16    Second, in *Hempel*, the Wisconsin Supreme Court concluded that the subdivision (1)(am)1. exception barred the release of records requested by a police officer seeking access to records related to his employer police department's investigation into his alleged sexual harassment of a female officer. *Id.*, 284 Wis. 2d 162, ¶1.  The police officer was the requester of the information, seeking specifically to reach confidential information about the investigation into his conduct.  *Id.*, ¶18.  Our supreme court applied the paragraph (1)(am) analysis because the officer was the requester, but denied a release of the records under the subdivision (1)(am)1. exception upon concluding there was still potential for an additional investigation.  *Id.*, ¶57.

¶17    Although our supreme court analyzed the application of WIS. STAT. § 19.35(1)(am) in *Linzmeyer*; its holding in *Hempel* three years later reflects a more in depth consideration of the limitations on access under paragraph (1)(am). The *Hempel* court concluded that "paragraph (am) should be interpreted to reflect its original purpose of giving an individual access to records containing personally identifiable information about the individual, so that he or she may determine what information is being maintained and whether this information is accurate."  *Id.*, 284 Wis. 2d 162, ¶55.  Our supreme court further concluded "[g]iving an individual access to records of a government investigation that may be used in a future proceeding, particularly internal investigative records that will identify informants, was never an objective of this paragraph."  *Id.*

¶18    In *Hempel*, our supreme court explained that the lack of ongoing investigation was important—and speculated that an ongoing investigation might yield a different result—but it concluded that "[t]o the extent that the teacher in *Linzmeyer* was attempting to use the exceptions in paragraph [1](am) to prevent the police department from releasing his records, he was misapplying the statute." *Hempel*, 284 Wis. 2d 162, ¶43.  The court stated that the procedural posture in *Linzmeyer* is "quite different" than the officer in *Hempel*, who wanted to force the release of records.  *Id.*  In *Linzmeyer*, the court rejected his attempt to use the investigations exception in paragraph (1)(am) to prevent disclosure of the police investigation report.  We conclude that for the same reasons we reject Mattioli's request to prevent the disclosure of the public records requested by the Acevedos.[6] *See id.*, 254 Wis. 2d 306, ¶18.  Mattioli was not requesting access to his own personal information and thus the exception in paragraph (1)(am) does not apply to these facts and circumstances.[7]

---

[6] The circuit court concluded that the *Linzmeyer* commentary about "a police investigation that was still on[]going" was "most likely" to invoke the WIS. STAT. § 19.35(1)(am) exception was not applicable because Mattioli had already been charged at the time of the request and there was no ongoing police investigation.  *See Linzmeyer*, 254 Wis. 2d 306, ¶18.  However, we are not inclined to create a bright line rule to tie the disclosure analysis to the issuance of charges.  The public records disclosure analysis must be made "on a case-by-case basis."  *See Hempel v. City of Baraboo*, 2005 WI 120, ¶62, 284 Wis. 2d 162, 699 N.W.2d 551.  To the extent that our reasoning differs from the circuit court, we affirm the circuit court's order on different grounds.  *See State v. Smiter*, 2011 WI App 15, ¶9, 331 Wis. 2d 431, 793 N.W.2d 920.

[7] Mattioli points to a comment in *Linzmeyer*, where our supreme court speculated that "[t]he exception under [subdivision (am)1.] would most likely apply to a police investigation that was still on[]going, an investigation where the government was still contemplating prosecution, or an investigation that overlapped with other on[]going cases."  *Id.*, 254 Wis. 2d 306, ¶18.  If we adopted Mattioli's reading of *Linzmeyer*, many police records would not be able to be released because they were connected to a complaint or investigation.  Such a broad position does not align with the general presumption of open access to public records.  "This presumption reflects the basic principle that the people must be informed about the workings of their government and that openness in government is essential to maintain the strength of our democratic society."  *Id.*, ¶15.

¶19 Instead, Mattioli's request for injunctive relief is properly analyzed as a general request under WIS. STAT. § 19.35(1)(a).  Mattioli argues that even when analyzed under paragraph (1)(a) and its balancing test, public policy considerations require the records to be kept confidential until Mattioli's trial is over.  However, under the paragraph (1)(a) analysis, Mattioli has not shown that a statutory or common law exception applies.  Without an exemption, the presumption of openness applies to the Acevedos' request for disclosure of the records.  Thus, we must next decide "whether that presumption can be overcome by a public policy favoring non-disclosure." *Linzmeyer*, 254 Wis. 2d 306, ¶24.  "The fundamental question we must ask is whether there is harm to a public interest that outweighs the public interest in inspection of the" records.  *Id.*  "If the harm to the public interest caused by release overrides the public interest in release, the inspection of the public records may be prevented in spite of the general policy of openness." *Id.*, ¶25.

¶20 To the extent that Mattioli's concerns are personal embarrassment, the public records law provides no shield.  "This public interest is *not* equivalent to an individual's personal interest in protecting his or her own character and reputation." *Id.*, ¶31.  Mattioli has the burden to show that the public interests favoring nondisclosure outweigh the public interests favoring disclosure.  *See John K. MacIver Inst. for Pub. Pol'y, Inc. v. Erpenbach*, 2014 WI App 49, ¶14, 354 Wis. 2d 61, 848 N.W.2d 862 ("It is the burden of the party seeking nondisclosure to show that 'public interests favoring secrecy outweigh those favoring disclosure.'") (citations omitted).  Mattioli has identified the public interest in having a fair trial, which transcends his individual interest.  We agree that a fair trial is in the public interest, but we reject the notion that all records must remain secret in order to ensure a fair trial.  *See Local 2489, AFSCME,*

***AFL-CIO v. Rock Cnty.***, 2004 WI App 210, ¶30, 277 Wis. 2d 208, 689 N.W.2d 644. When we have previously considered secrecy to ensure fairness, we concluded that "[i]f that proposition were true, then all criminal complaints should be sealed and pretrial proceedings conducted outside of public view because the public also takes a dim view of criminal conduct." ***Id.***

¶21 The circuit court crafted a solution to Mattioli's public policy concern for a fair trial. Although Mattioli argues that redaction was not requested by any party, we conclude that the circuit court's decision with regard to redaction complied with Wisconsin law. WISCONSIN STAT. § 19.36(6) provides for redaction in the disclosure of public records when a record contains information subject to disclosure under WIS. STAT. § 19.35(1)(a) or (am) and "information that is not subject to such disclosure[.]" Sec. 19.36(6). The records custodian "shall provide the information that is subject to disclosure and delete the information that is not subject to disclosure from the record before release." ***Id.*** "[T]o the extent that … privacy interests are implicated, they could be protected by a redaction[.]" ***Linzmeyer***, 254 Wis. 2d 306, ¶40. We conclude that the circuit court's solution is satisfactory and statutorily sound.

¶22 We conclude that the public records law's policy of open disclosure applies to the requested records in this case. The investigation exception under WIS. STAT. § 19.35(1)(am)1. is not applicable as a shield for Mattioli, who was the subject of an investigation but was not the requester of the public records. Further, Mattioli is unable to show this court any statutory or common law exceptions that would take the requested records out of the purview of open access under the public records law. Additionally, Mattioli has not shown a public policy that would override the general public policy requiring public records be open to

12

disclosure. Thus, we affirm the decision of the circuit court, including its previously ordered redactions. *See **Linzmeyer***, 254 Wis. 2d 306, ¶43.

## CONCLUSION

¶23 For the reasons explained above, we conclude that MPD is not enjoined from releasing the requested records and those records may be released, with the redactions previously ordered by the circuit court.

*By the Court.*—Order affirmed.

Not recommended for publication in the official reports.